1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16

SALVADOR VENEGAS,

    Plaintiff,

v.

CHAD BIANCO, et al.,

    Defendants.

Case No. 5:19-cv-01260-JLS-SHK

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DISMISSING CLAIMS IN THE SECOND AMENDED COMPLAINT**

17
18
19
20
21

    This Report and Recommendation ("R&R") is submitted to the Honorable Josephine L. Staton, United States District Judge, under 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

22

## I.    SUMMARY OF RECOMMENDATION

23
24
25
26
27
28

    <u>Pro se</u> Plaintiff Salvador Venegas ("Plaintiff"), an inmate at California Substance Abuse Treatment Facility & State Prison in Corcoran, California, filed a Second Amended Complaint ("SAC") naming the following defendants: the County of Riverside/Riverside Board of Supervisors ("County"), the Riverside County Sheriff's Department ("RCSD") (collectively with the County, "Entity Defendants"); Keefe Group/Keefe Commissary Network, LLC ("Keefe LLC"), a

company contracting with the County; and the following individuals (collectively, "Individual Defendants"), all of whom are sued in their official and individual capacities: Chad Bianco, the Sheriff of the County ("Bianco"); Scot Collins, Chief Deputy at RCSD ("Collins"); Boydd,[1] lieutenant at Indio Jail; Purcelli, general manager/vice-president at Keefe LLC; and the following officers of Robert Presley Detention Center ("RPDC"): Steve Taylor, lieutenant and supervisor of the Gang Investigation Unit ("GIU") ("Taylor"); Daniel Hedge, Captain/Facility Commander ("Hedge"); Lieutenant Campa; the following sergeants: Hill, Uriarte, Kafka, and Curtner; the following corporals: Crebar, Sappington, Harris, and Webb; and the following deputies: Rocha, Vernal, Martinez, Sanchez, Molina, Arteaga, Scott, Conchas, and Deanda.  Electronic Case Filing Number ("ECF No.") 21, SAC at 8-10.[2]  Plaintiff alleges that the Entity Defendants, Keefe LLC, and the Individual Defendants (collectively, "Defendants") violated his rights under 42 U.S.C. § 1983 ("§ 1983").  Id.

The Court previously dismissed Plaintiff's Complaint ("Complaint" or "Compl.") and First Amended Complaint ("FAC").  ECF Nos. 6, 16, Orders Dismissing With Leave to Amend ("ODLAs").  Plaintiff has corrected several, but not all of the deficiencies outlined by the Court.

Accordingly, the Magistrate Judge recommends: (1) Plaintiff's § 1983 official capacity claims against all Individual Defendants be DISMISSED WITH PREJUDICE; (2) Plaintiff's unconstitutional Takings claim be DISMISSED WITH PREJUDICE; and (3) Plaintiff's § 1983 claims against Defendants Bianco, Kafka, Harris, and Curtner, in their individual capacities, be DISMISSED WITH PREJUDICE.  If accepted, the Court will issue a separate order regarding service of the remaining § 1983 claims in the SAC.

/ / /

---

[1] Plaintiff identifies some Defendants by one name only.

[2] Capitalization has been normalized unless otherwise noted in all quotations of the SAC.

## II.    BACKGROUND

### A.    Procedural History

On June 4, 2019, Plaintiff, who was then held at RPDC in Riverside, California, constructively[3] filed this action under § 1983 seeking damages and equitable relief for alleged violations of his constitutional rights while he was held at RPDC and Indio jail.  ECF No. 1, Compl.  Plaintiff constructively filed his request to proceed in forma pauperis ("IFP Request") on June 31, 2019.  ECF No. 2, IFP Request.  The Court granted Plaintiff's IFP Request on July 31, 2019.  ECF No. 4, Order Granting IFP Request.

On August 26, 2019, the Court issued its first ODLA.  ECF No. 6, ODLA. Plaintiff then filed his FAC, ECF No. 12, FAC, which the Court dismissed, with leave to amend, in a fifty-one-page order ("Second ODLA"), ECF No. 16, Second ODLA.  On July 6, 2020, the Court received Plaintiff's SAC, now the operative Complaint.  ECF No. 21, SAC.

Plaintiff has filed four other civil rights lawsuits that are either pending or have been resolved in this District and which involve several overlapping claims. See Venegas v. Cal. Dep't of Corr., No. 05-1727 (2005); Venegas v. Sniff, No. 5:18-cv-02293-JLS-SHK (filed on Oct. 26, 2018); Venegas v. Bianco, No. 5:19-cv-01557-JLS-SHK (filed on Aug. 20, 2019); Venegas v. Cnty. of Riverside, No. 5:20-cv-1359-JLS-SHK (filed on July 1, 2020).

### B.    Original Complaint

The Court screened Plaintiff's Complaint and dismissed it, with leave to amend, after the Court concluded that Plaintiff failed to allege sufficient facts to support official capacity claims against Defendants.  ECF No. 6, ODLA at 14-16. The Court also concluded that Plaintiff failed to state claims against Defendants

---

[3] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed.  Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009).

3

1  Taylor and Hedge, and that some of Plaintiff's allegations failed to comply with

2  Federal Rule of Civil Procedure ("Rule") 8 and Rule 10.  Id. at 16-20.

3        **C.**    <u>**First Amended Complaint**</u>

4        After receiving Plaintiff's FAC, the Court concluded that Plaintiff was able to

5  state a claim for a violation of his due process rights for his indefinite placement in

6  "solitary isolation" and that Plaintiff was able to state a claim for First Amendment

7  retaliation.  ECF No. 16, Second ODLA at 17-31, 37-40.  However, the Court

8  dismissed Plaintiff's FAC, with leave to amend, after determining that: (1) increased

9  commissary prices do not provide a basis for a constitutional claim; (2) Plaintiff

10  failed to state a claim for a violation of his right to free exercise of religion; (3)

11  Plaintiff's claims against Defendants Hedge and Campa failed; (4) several of

12  Plaintiff's allegations failed to comply with Rule 8; and (5) Plaintiff failed to

13  comply with Court orders and local and federal rules of civil procedure, including

14  Rules 18 and 20.  Id. at 40-49.

15        **D.**    <u>**The Operative SAC**</u>

16            **1.**    **Factual Allegations**

17        In his SAC, Plaintiff includes the following factual allegations, which the

18  Court accepts as true at this stage of the litigation.

19        Since his arrest and booking on February 28, 2014, Plaintiff had been held in

20  administrative segregation ("ADSEG") "due to alleged prison gang associations[.]"

21  ECF No. 21, SAC at 10.  Plaintiff was initially held at Cois Byrd Detention Center

22  ("CBDC"), and on June 4, 2018, Plaintiff was transferred from CBDC to an RPDC

23  "medical housing cell."  Id. at 10, 10 n.2.

24        On September 2, 2018, Plaintiff was transferred to Indio Jail in "preparation

25  of [P]laintiff's criminal trial."  Id. at 10.  While at Indio Jail, Plaintiff was housed in

26  "isolation housing" where the lights were left on twenty-four hours a day, there was

27  no hot water, and Plaintiff "lacked adequate furnishings" including "an adequate

28  bed, a dining/writing table and seat or stool."  Id.  Plaintiff filed a grievance on

1  September 10, 2018, challenging the isolation designation and his "inability to
2  adequately prepare for trial[] due to lack of furnishing"; thereafter, Plaintiff was
3  rehoused to an adequately furnished cell.  Id.

4        After Plaintiff's guilt phase trial in the capital murder case concluded, on
5  November 16, 2018, he was re-housed in the "isolation unit . . . due to complaining
6  about his conditions of confinement."  Id.   Plaintiff submitted another grievance
7  challenging the "inadequacies of the isolation cells," specifically, that Plaintiff was
8  unable to maintain proper hygiene and prepare for the sentencing portion of his
9  criminal trial, in which he was proceeding pro se.  Id. at 11.  "Initially, the grievance
10  was denied" because the isolation cell was only temporary housing until Plaintiff's
11  criminal trial concluded; however, Plaintiff was told by Sergeant Greenwalt that
12  Defendant Boydd ordered that Plaintiff be housed in the isolation unit "due to
13  complaining and filing a lawsuit[.]"  Id.

14        On November 26, 2018, Plaintiff appealed his grievance to Defendant Boydd,
15  who responded that Indio Jail has been granted a "variance" because it is an old
16  facility, and that when a new facility was built Plaintiff's concerns would be
17  remedied.  Id.  Plaintiff argues that the "variance" cited is merely an RCSD
18  "practice to house inmates in isolation cells as an act of reprisal" against "inmates
19  exercising their right to submit grievances and pursu[e] litigation against RCSD."
20  Id.

21        On December 18, 2018, after concluding the "penalty-phase of his criminal
22  trial," Plaintiff was transferred to RPDC and again placed in ADSEG.  Id.  From the
23  time of his December 2018 transfer to RPDC, Plaintiff filed several grievances
24  about the conditions of his confinement that form the basis of his claims before this
25  Court.  The facts of Plaintiff's grievances are categorized below by topic.

26                     a.     ADSEG Classification

27        The day after Plaintiff was transferred back to RPDC, on December 19, 2018,
28  Plaintiff filed a grievance requesting a thirty-day review, pursuant to RCSD policies,

1    of his placement in ADSEG and requesting release into general population.  Id.

2    Defendant Uriarte responded to Plaintiff's grievance on December 31, 2018, stating:

3            [Plaintiff] will remain in [ADSEG] housing, review found he is a
             security risk[] and poses a threat to deputies, civilian staff and other
4            inmates.  He has manipulated jail locks, escaped from program room,
             held a nurse hostage with intent to hurt a deputy, cut a [protective
5            custody] inmate, [has been] found in possession of several jail made
             shanks and continues to threaten staff[.]
6

7

8    Id. at 11-12.

9            On January 14, 2019, Plaintiff organized a hunger strike in the ADSEG unit at

10   RPDC and wrote a letter to Sheriff Bianco, the County, and RPDC jail personnel

11   stating the constitutional basis for the strike and requesting basic due process and an

12   end to discriminatory conduct against "minorities."  Id. at 12.

13           Plaintiff claims that inmates housed in the 2A ADSEG unit are only allowed

14   thirty minutes of out-of-cell confinement every twenty-four hours and argues that

15   inmates are expected in that thirty-minute window to use the phones to call family

16   or attorneys, shower, use hair and nail clippers, read, watch television, walk around

17   the dayroom, and socialize with other inmates through metal doors.  Id.  Plaintiff

18   claims that ADSEG inmates are severely restricted in their movements, monitored

19   constantly by video or audio equipment, and always restrained when they are

20   transported out of the housing unit.  Id. at 12.  Additionally, ADSEG inmates are

21   provided just three hours of recreation time per week, which Plaintiff characterizes

22   as "insufficient and unhealthy."  Id. at 13.

23           On January 17, 2019, Plaintiff filed a grievance complaining of daily

24   "repeated cell searches in retaliation [for] the hunger strike protest" by Defendants

25   Rocha, Crebar, Vernal, Sanchez, Arteaga, Molina, and Martinez.  Id. at 12.  On

26   January 18, 2019, Defendants Kafka and Crebar met with Plaintiff to discuss

27   Plaintiff's letter, and Defendants Kafka and Crebar "agreed to re-evaluate and

28   implement new practices" in the interests of the inmates' due process rights.  Id.

On February 2, 2019, Plaintiff once again filed a grievance regarding his thirty-day review of ADSEG classification, alleging (1) that the review process was a "sham" and failed to consider Plaintiff's release "due to his alleged influence and the amount of time he spent in prison," and (2) that Plaintiff's continued retention in ADSEG was "punitive, rather than administrative[.]" Id. at 13. On February 11, 2019, Defendant Uriarte responded to this grievance by referring Plaintiff to the previous responses to Plaintiff's grievances on the subject. Id. ("'[Y]our administrative housing complaint has been addressed and explained to you on several occasions. Please refer to responses dated 4-22-14, 4-10-16, 4-20-18, 5-3-18, 7-26-18, and 12-31-18[.]'"). Id. Plaintiff argues that "[a]ll of the above-mentioned dates support Plaintiff's claim that despite his repeated attempts to request a meaningful review of his continued retention in ADSEG he will never be afforded a meaningful review due to his initial classification: prison gang validation." Id. (emphasis omitted). Plaintiff claims that Defendant Uriarte admitted that Plaintiff would not be considered for release into general population and that Defendant Uriarte stated that "[r]egardless of any prior punishments, you will never be released from [ADSEG] to general population[,] therefore every thirty day review will be denied." Id.

b.    Transfer to Medical Unit/Disciplinary Isolation

Plaintiff then alleges that on February 22, 2019, while he was making a court appearance in Indio, he was reassigned from the ADSEG unit at RPDC to isolation in a medical unit on the seventh floor at the RPDC, and Defendants Rocha and Martinez relocated Plaintiff's property. Id. at 13-14. Plaintiff describes this cell as "equipped with a negative air pressure system/decompression system," which produces extremely cold air and loud engine sounds all day. Id. at 14. Plaintiff states that inmates in the medical housing units are confined to their cells twenty-four hours a day, and such housing is intended to be short term. Id.

///

Plaintiff submitted a grievance the same day asking to be removed from the medical unit because he is classified as ADSEG and should be in the "designated ADSEG unit."  Id.  Plaintiff's "initial premise, for which [he] submitted [the] grievance," was to "request his removal from extremely cold temperature conditions."  Id. at 15.  Additionally, Plaintiff stated in his grievance that he was only placed in the medical isolation unit as punishment and retaliation for "encouraging and educating other inmates in exercising their rights to challenge conditions of confinement[.]"  Id. at 14.  The next day, "[D]efendants Rocha and Hill, of the classification unit, responded[,] . . . 'Because of recent incidents that have occurred in [ADSEG unit] 2A . . . you know what I am talking about, you will remain in isolation.'"  Id. at 14-15 (second ellipses in original, emphasis omitted). Plaintiff alleges that although he sought a more detailed explanation, Defendant Rocha remained vague in her responses.  Id. at 15.  Defendant Rocha also told Plaintiff that the RCSD lieutenant, Defendant Taylor, "could assign [Plaintiff] to any cell in the jail" and that Defendant Taylor did not like Plaintiff.  Id. (internal quotation marks omitted).

On February 23, 2019, Plaintiff submitted another grievance, "challenging the purpose of the cell assignment" and stating that he "'was told that RPDC administration elected to re-house [Plaintiff] into an isolation cell.  However, the purpose of [Plaintiff's] isolation undermine[d] . . . RCSD policy 504.01.'"  Id. (citing RCSD policy 504.01, which states, "when an inmate[']s presence within a facility's inmate population presents a potential threat to the inmate[']s own safety, the safety of others, endangers facility security or jeopardizes the integrity of any investigation, the inmate may be placed in [ADSEG]") (emphasis omitted). Defendant Arteaga responded to Plaintiff's February 23, 2019 grievance by stating that Plaintiff's grievance "was addressed by [Defendant] Rocha" and that Plaintiff's grievance was "a duplicate copy[.]"  Id. at 16.  Plaintiff clarifies that the grievances

were not duplicates despite discussing the same issues: "inadequate ventilation and the punitive nature of plaintiff's re-housing." <u>Id.</u>

On February 27, 2019, Plaintiff appealed his grievance arguing that the conditions of his confinement were cruel and unusual, and that the purpose behind the isolation confinement was retaliatory and punitive. <u>Id.</u> Defendant Taylor, the lieutenant at RPDC, responded on March 11, 2019, stating that Defendant Rocha had adequately explained the reasons for Plaintiff's placement in isolation. <u>Id.</u>

On March 15, 2019, Plaintiff submitted his final appeal to the facility commander, Defendant Hedge, describing the detrimental effects of prolonged isolation on inmates' mental health. <u>Id.</u> On March 18, 2019, Defendant Hedge responded that Defendants Rocha and Taylor had sufficiently responded to Plaintiff's grievances. <u>Id.</u>

Plaintiff alleges that RCSD's practice of isolating Plaintiff for "such a prolonged duration is without equal in the United States[,]" and Plaintiff has been "in a state of near total solitude, continuously[,] since" February 22, 2019. <u>Id.</u> at 17. Plaintiff states he is housed in a double-occupancy cell, not permitted a cell mate, and his only communication is by yelling down the hallway to other inmates. <u>Id.</u> Plaintiff argues these "extreme restrictions on human contact are imposed on Plaintiff as a matter of official and unofficial RCSD policy and have been approved or implemented by Defendants Bianco, Taylor, Hedge[,] and Graves[.]"[4] <u>Id.</u> Plaintiff further alleges that the Entity Defendants are responsible "for these stark

---

[4] The Court notes that Plaintiff does not list "Graves" as a defendant in the caption of the SAC, <u>see</u> ECF No. 21, SAC at 1, or where Plaintiff lists the Defendants in his introduction of the case, <u>see id.</u> at 8-10. Rule 10(a) requires that plaintiffs include the names of all parties in the caption of the complaint. The Court cannot order service of the SAC without this information. <u>Soto v. Bd. of Prison Term</u>, 2007 WL 2947573, at *2 (E.D. Cal. Oct. 9, 2007). Therefore, to the extent Plaintiff brings claims against "Graves[,]" who is not a named defendant in this case, such claims should be dismissed because they violate Rule 10(a). <u>See Martinez v. Davey</u>, No. 16-cv-1658-AWI-MJS (PC), 2018 WL 898153, at *5 (E.D. Cal. Feb. 15, 2018) (dismissing, among other reasons, because "Plaintiff makes allegations against numerous non-party individuals not named in the caption of the complaint" in violation of Rule 10(a)).

1  conditions[,]" and "for the degree to which the conditions are compounded by the

2  punitive measures, including a pattern and practice of coercive denial of standard

3  medical care." Id.

4      Plaintiff alleges that he has suffered mental health issues as a result of this

5  severe isolation. Id. Periodically, a mental health care worker stops by Plaintiff's

6  cell and asks whether Plaintiff is alright, but because of the nature of the medical

7  isolation unit, Plaintiff is unable to privately consult with a mental health care

8  provider because staff and other inmates can eavesdrop on Plaintiff's conversations.

9  Id. Plaintiff states he has "declined to seek any mental health care . . . because of

10  concerns over lack of confidentiality." Id. at 18.

11              c.    Retention in ADSEG and Thirty-Day Reviews

12      "RCSD places inmates who have been validated as gang affiliates into the

13  above conditions in ADSEG for an indefinite term, served in repeatedly renewed

14  30-day increments, pursuant [to] RCSD policy 504.01." Id. Further, Plaintiff

15  argues that RCSD "ignores [P]laintiff's present/actual behavior, [and instead]

16  identifies prison gang affiliates through a process called prison gang validation[.]"

17  Id. Additionally,

18      RCSD is not required to show that Plaintiff has violated a jail rule,
    broken the law, or has even acted on behalf of a prison gang. Indeed,
19      Plaintiff has not been provided notice of illegal gang activity or
    disciplined for conduct thereof, however, he has been placed in
20      isolation, and severely restricted based on the mere allegation that he
21      is associated with a prison gang.

22

23  Id.

24      Plaintiff also alleges that Defendants Bianco, Hedge, Taylor[,] and Boydd

25  place inmates who are "active litigants, such as Plaintiff[,]," in ADSEG. Id.

26      On September 5, 2019, Plaintiff participated in "the first 'mock' [thirty-day

27  review]" of his status that he was allowed to be present for; Defendants Sanchez,

28  Crebar, Molina, Arteaga, and Vernal oversaw the review. Id. at 18-19 (internal

quotation marks omitted).  Plaintiff appears to allege that this was a "mock" review because it was conducted by gang investigators, not classification personnel, and because the "reviews are predetermined prior to the purported reviews." Id. at 19 (emphasis omitted).  On September 13, 2019, Plaintiff requested a written explanation for his continued retention in isolation.  Id.  On September 23, 2019, Defendant Crebar responded in writing that Plaintiff "displayed negative behavior and failure to follow facility rules which is a danger to staff and inmates." Id. Plaintiff states that he refuses to follow RCSD policy which requires inmates be fully dressed to receive meals.  Id. at 19 n.19.  Based on Defendant Crebar's response, Plaintiff infers that his isolation is punitive and not administrative because it is based on an "assumption" about Plaintiff's behavior in the past thirty days.  Id. at 19.

On September 22, 2019, a day before Plaintiff received his grievance response from Defendant Crebar, Plaintiff submitted an appeal asking for a "meaningful review of his continued retention in isolation" and stating that Defendants were being deliberately indifferent and violating his rights to equal protection and due process.  Id.  On October 8, 2019, Defendant Curtner provided a response to Plaintiff's appeal stating that his grievances had been addressed and would "not be forwarded any further." Id.

On October 2, 2019, Defendants Sanchez, Crebar, Molina, Arteaga, and Vernal conducted a status review but cited the same "pretext" for retention as the prior month, demonstrating that "[h]is isolation retention would be indefinite." Id. at 19-20.  Plaintiff then submitted an appeal arguing the thirty-day review process was a "sham." Id. at 20.  Defendant Hedge responded by suspending Plaintiff's grievance privileges.  Id.  Plaintiff alleges that "[o]nce an inmate is validated by the CDCR as a gang affiliate and placed in ADSEG for an indefinite period, he is entitled to periodic 'reviews' of his retention, . . . although [Plaintiff] has repeatedly been told by every gang investigator that he will never be released to the general

population." Id.  Plaintiff further argues that "[u]nless Plaintiff is willing to debrief, the 30-day review allows absolutely no possibility of release to the general population.  The purported reviews are biased and prejudicial in nature." Id.  Plaintiff states that RCSD and its agents "have made a predetermined decision to deny Plaintiff's release to the general population until he debriefs[,] dies[,] or [is] transferred to state prison." Id. at 21.

Plaintiff states that as a result of the prolonged isolation and conditions of confinement, he has suffered and continues to suffer "crushing mental anguish, pain[,] . . . anxiety and hypertension, nervousness, insomnia, chronic fatigue, lethargy, social withdrawal[,] and overall deterioration." Id.  Further, Plaintiff states he has developed mental illness due to the prolonged isolation.  Id.

d.    <u>Other Acts of Retaliation</u>

In addition to Plaintiff's placement in administrative segregation unit 2A and in the medical unit, Plaintiff also alleges that Defendants retaliated against him in various other ways for filing grievances about prison conditions and policies.

(i)    Verbal Threat of Retaliation

On January 28, 2019, Plaintiff filed a grievance complaining that Plaintiff's grievances had been "lost or misplaced." Id. at 22 (emphasis omitted).  Defendants Uriarte and Webb responded to this complaint by stating in front of all the inmates in Plaintiff's unit that due to Plaintiff's repeated grievances, there would be "acts of reprisal, such as cell searches and disciplinary actions[.]" Id.  Plaintiff alleges this "verbalized threat of retaliation" was "intended to discourage [P]laintiff from seeking administrative remedy, and cause animus between [P]laintiff and other [] inmates." Id.

(ii)    Cell Searches

On January 29, 2019, Defendant Uriarte asked Plaintiff to exit his cell to "speak regarding the above-mentioned grievance[.]" Id.  Defendant Scott then entered Plaintiff's cell, searched Plaintiff's legal property, and confiscated

12

Plaintiff's grievances and documents in violation of RCSD policy—which requires that an inmate who is proceeding pro se and has privileged work product in his cell be present when his cell is searched, and that a supervisor also be present. Id. at 22, 22 n.22. The same day, Plaintiff filed a grievance regarding Defendants Uriarte and Webb's threats of retaliation and included a request for DVR footage for the time and date of the cell search. Id. at 22. Another cell search was conducted on January 30, 2019 at 3 a.m. by Defendants Deanda and Conchas at the direction of Defendants Uriarte and Webb. Id.

On February 22, 2019, Defendants Rocha and Martinez claimed to have found a weapon in Plaintiff's cell when they were relocating Plaintiff's property to an isolation unit without Plaintiff's supervision. Id. Plaintiff denies that he was in possession of a weapon and believes that Defendants Rocha and Martinez planted a weapon in Plaintiff's cell "because it was suspicious that a camera was not employed to search [P]laintiff's cell in his absence." Id. at 22 n.23, 23. Defendant Sappington, with Defendant Hill's approval, then issued a "notice of violations" to Plaintiff. Id. at 23. Plaintiff claims that Defendants Hill and Sappington "had already determined the disciplinary disposition" before providing Plaintiff with notice of the rule violations. Id.

Defendant Harris then presided over the disciplinary hearing. Id. Plaintiff requested to present video footage at the hearing, but Defendant Harris denied the request. Id. The disciplinary hearing resulted in Plaintiff being sentenced to seven days in disciplinary housing and three days on the disciplinary diet. Id. On February 27, 2019, Plaintiff submitted a grievance arguing the allegations that resulted in his discipline were fabricated and that he was deprived of a fair disciplinary hearing because the hearing officer had "predetermined the decision" and was biased against him. Id.

On February 27, 2019, Defendant Hill told Plaintiff he could not have access to "DVR footage" and would need to obtain "a warrant." Id. Defendant Hill told

Plaintiff "you will not be afforded due process, you are incarcerated, and you have no rights[.]"  Id.

On March 6, 2019, Plaintiff submitted an appeal, arguing he had been disciplined as "an act of reprisal."  Id.  Defendant Sappington told Plaintiff that the "Lieutenant will provide you [with] a written response," but Plaintiff received none. Id.  Plaintiff submitted a final appeal on March 15, 2019, to Defendant Hedge, but Defendant Hedge "failed to respond to the issues raised."  Id. at 24.

e.    <u>Religious Discrimination</u>

On January 18, 2019, Plaintiff submitted a grievance requesting access to religious items, including "sage, incense, feathers, sweat lodge services, and spiritual advisors[] of the Native American Faith."  Id. (footnotes omitted).  On January 29, 2019, Defendant Uriarte told Plaintiff the items he requested would be reviewed for approval; however, the requested items and services were ultimately denied.  Id.  On January 30, 2019, Defendant Hill told Plaintiff that "'Native Americans do not have the same rights as others'" because certain religious items could be security threats, and he told Plaintiff that his religious rights would only exist in prison after sentencing.  See id.  On February 1, 2019, Plaintiff appealed his grievance.  Id.  On February 23, 2019, Defendant Campa provided a written response stating, "As [S]ergeant Hill points out . . . the practices you ask for are in violation of jail policy and create a security issue."  Id.  However, Plaintiff was not informed what policies Defendants Hill and Campa relied upon to deny Plaintiff's requests.  Id.  Further, Defendant Hill told Plaintiff that his cell was "like a sweat lodge, but colder."  Id. at 25.  Plaintiff alleges he was "placed in an extremely cold cell due to requesting a sweat lodge."  Id. at 24-25.

On February 23, 2019, plaintiff submitted a final grievance appeal, and on February 28, 2019, Defendant Hedge provided a final written response to Plaintiff's grievance appeal stating that the responses Plaintiff received "were accurate and

14

1  reflect compliance with the intent of the Religious Land Use and Institutionalized

2  Persons Act of 2000 [("RLUIPA" ).]"  Id. at 25.

3              f.     Misuse of Inmate Welfare Funds and Price Fixing

4       Plaintiff alleges the Entity Defendants established a commissary system and

5  have contracted with a private company, Keefe LLC, since 2016.  Id.  Plaintiff

6  purchases his hygiene and food items through this commissary system.  Id.

7       Following a five-percent price increase on commissary hygiene and food

8  products, Plaintiff filed a grievance on February 4, 2019, arguing this price increase

9  was unreasonable.  Id.  Plaintiff alleges that Defendants County and Keefe LLC

10  "have exploited and extorted inmates and their families using a manipulative

11  contract for unjust enrichment."  Id.  Plaintiff argues that Sheriff Bianco, the

12  County, and Keefe LLC have "circumvented the limited statutory authority" granted

13  to them through Cal. Penal Code 4025, et seq.  Id. (emphasis omitted).

14       "On several occasions[,] [P]laintiff requested an audit" asking for information

15  justifying "the unreasonable price[] increases on all items," but Plaintiff's requests

16  were denied.  Id. at 26.  On February 11, 2019, Keefe LLC employee "Tina" wrote

17  Plaintiff and told him that "[a]ll prices are approved by the [C]ounty [] before any

18  changes go into effect[.]"  Id.  Plaintiff submitted a grievance about price increases,

19  and on February 14, 2019, Defendant Sappington told Plaintiff that he would

20  "'check into it.'"  Id.  On March 8, 2019, Defendant Sappington provided Plaintiff

21  with the following written response: "'the [S]heriff does not set pricing for

22  commissary,'" which Plaintiff says "is contrary to state statutes."  Id. (citing penal

23  code §4025 (a)(b)) (emphasis omitted).  Plaintiff submitted a final grievance appeal,

24  but the responses just confirmed that the "original grievance and staff responses

25  [were] truthful, appropriate and adequate."  Id. at 26-27.  Plaintiff then filed a

26  records request under California's public records act asking for a contract between

27  the County and Keefe LLC and was directed to the RCSD website.  Id. at 27.

28  / / /

On April 28, 2020, Plaintiff "received a printed contract from a family member, to which enjoined Defendants County and Keefe [LLC]" and Defendant Purcelli, and the terms of the contract were approved by Defendant Collins and the County on October 25, 2019.  Id.  Pursuant to the contract and RCSD policy, inmates were to purchase goods and services from Keefe LLC through the inmate welfare fund and then the goods would be resold to inmates; the contract states "'[t]he source of the funds: Program paid by inmates.'"  Id. (emphasis omitted). Further, the contract states that money deposited in inmate accounts will be charged for deposit services.  Id.  Starting in 2015, Defendants RCSD, the County, and Keefe LLC began to charge Plaintiff for cash deposits into his trust account without notice, thereby "circumvent[ing] the statutory language in order to profit[.]"  Id. at 27-28.

### 2.    Plaintiff's Causes of Action

#### a.    Cruel and Unusual Punishment

Plaintiff alleges that the Entity Defendants and Defendants Sanchez, Crebar, Curtner, Kafka, Molina, Martinez, Rocha, Arteaga, Bianco, and Vernal deprived Plaintiff of his basic human needs and dignity in violation of his rights under the Fourteenth and Eighth Amendments.  Id. at 28-29.  Plaintiff alleges that he is confined to his medical housing cell twenty-four hours a day.  Id. at 14. Additionally, Plaintiff alleges that by placing Plaintiff in prolonged confinement without access to medical and mental health care, depriving him of human contact, environmental stimulation, "exercise, sleep, nutrition, and meaningful activity," these Defendants have caused Plaintiff "psychological and physical pain[.]"  Id. Plaintiff further alleges that the Entity Defendants have "disproportionally punished [P]laintiff with long-term and indefinite isolation," have been deliberately indifferent to Plaintiff's rights, and that the Entity Defendants' policies and practices constitute unlawful punishment.  Id. at 29.

/ / /

16

b.   Due Process

Plaintiff alleges that the Entity Defendants and Defendants Sanchez, Crebar, Kafka, Molina, Martinez, Rocha, Arteaga, Bianco, and Vernal deprived him of his due process liberty interests under the Fourteenth Amendment.  See id. at 29-30. Specifically, Plaintiff alleges that these Defendants deprived Plaintiff of "liberty interests without due process of law by housing [P]laintiff in segregation/isolation[] as an act of reprisal[.]"  Id. at 30.  Plaintiff states that his continued placement in isolation and ADSEG "constitutes an atypical and unusual hardship as compared with the ordinary incidents of prison life" because of "the extremely harsh and isolated conditions of the isolation unit" and "the lengthy duration of confinement in the isolation unit."  Id.

Plaintiff also claims that his due process rights were violated because Defendants denied him "meaningful and timely periodic review of his continued long-term" detention in isolation.  Id.  Plaintiff states that the thirty-day reviews conducted by Defendants Vernal, Sanchez, Molina, Martinez, Crebar, and Arteaga are meaningless because they are based on Plaintiff's prison gang affiliation and are "predetermined prior to every review."  Id. at 30-31 (emphasis omitted).  Further, Plaintiff alleges that based on Defendant Hedge's responses to Plaintiff's grievances, it is clear that Defendant Hedge "condones [D]efendants Rocha and Taylor's action . . . [and] therefore authorized [P]laintiff's isolation."  Id. at 16.

c.   Religious Freedom

Plaintiff alleges that Defendants RCSD, the County, Hill, Uriarte, Campa, and Hedge violated Plaintiff's First and Fourteenth Amendment right to freely exercise his religion and Plaintiff's rights under California law and RLUIPA.  Id. at 31-32. Plaintiff states that under the Equal Protection Clause of the Fourteenth Amendment, correctional facilities have an obligation to "treat all similarly situated people equally[,]" therefore, Plaintiff, who is held in a jail instead of a prison, should have an equal opportunity to practice his religion.  Id. at 31.  Plaintiff alleges

17

that Defendants RCSD, the County, Hill, Uriarte, Hedge, and Campa, through their racist policies and practices, denied Plaintiff the ability to practice his religion.  Id.

Plaintiff alleges that he was placed in a cold cell in retaliation for requesting a sweat lodge to practice his religion.  See id. at 24-25.  Plaintiff concludes that he has been denied his religious practice "because he refuses to assimilate and conform to the predominant Christian beliefs."  Id. at 25.

### d.    Takings Claim and Price Fixing

Next, Plaintiff alleges that the Entity Defendants RCSD, Keefe LLC, and Individual Defendants Collins and Purcelli "infringed on [P]laintiff's Fifth and Fourteenth [A]mendment rights."  Id. at 32.  Plaintiff alleges these Defendants have "extorted inmates" and "depleted the inmate welfare fund by expending private funds for public purpose, including by grossly inflating commissary items" and engaging in "illegal and prohibited contractual agreements[,]" and that these actions constitute impermissible "takings" of Plaintiff's property.  Id.  Plaintiff also alleges that Defendant Bianco is illegally increasing commissary prices and using funds paid to the commissary to fund a new jail facility in Indio.  Id. at 26.

### e.    First Amendment Retaliation

Lastly, Plaintiff alleges that Defendants Rocha, Crebar, Vernal, Arteaga, Molina, and Martinez executed daily cell searches in retaliation against the hunger strike protest Plaintiff organized.  Id. at 12.  Plaintiff additionally alleges that Defendants Uriarte, Webb, Rocha, Martinez, Conchas, Deanda, Sappington, Hill, Harris, and Hedge retaliated against him for using the jail grievance system and filing a lawsuit by searching Plaintiff's cell, planting a weapon in Plaintiff's cell, and giving him an unfair disciplinary hearing related to the weapon.  Id. at 22-24.  Plaintiff also alleges that his continued placement in ADSEG and his relocation to the medical unit was retaliation for filing grievances and lawsuits and for organizing hunger strikes.  Id. at 16, 19.  Additionally, Plaintiff alleges that his grievances were purposefully lost as an act of retaliation for filing grievances.  Id. at 22.  Plaintiff

also alleges that Defendants Boydd and Taylor, at Indio Jail and RPDC respectively, transferred him to isolation due to Plaintiff's complaining and litigating "in order to discourage, chill[,] and stifle his litigation efforts."[5]  Id. at 31.

### 3.    Relief Requested

Plaintiff requests numerous forms of relief, including that the Court: (1) "[d]eclare that Defendants['] policies and practices of confining [P]laintiff in isolation" violate Plaintiff's rights under the Eighth and Fourteenth Amendments; (2) order Defendants to develop and implement a plan to eliminate the harm Plaintiff suffers due to Defendants' policies and ensure Plaintiff receives a meaningful opportunity to be heard prior to being placed in ADSEG and every thirty days to ensure continued confinement is warranted; (3) release Plaintiff from isolation in the medical unit and allow him to have human contact; (4) declare RCSD and the County policies denying Plaintiff access to religious services to be unconstitutional under the First and Fourteenth Amendments; (5) issue an injunction compelling Defendants to provide a plan for allowing Plaintiff to exercise his religious freedom through sweat lodge ceremonies, sage, incense, feathers, medicine bags, spiritual advisors, and group worship; (6) issue an injunction against the excessively inflated commissary prices and void the contract with Keefe LLC; (7) declare that the Entity Defendants, Collins, Purcelli, and Keefe LLC violated Plaintiff's rights under the Fifth and Fourteenth Amendments through their illegal takings, contracts, and price-fixings; (8) award Plaintiff compensatory and punitive damages for his emotional and physical injuries; and (9) effect any other relief the Court deems just and proper.  Id. at 7, 33-34.

/ / /

/ / /

/ / /

---

[5] Plaintiff lists this allegation under his Due Process cause of action; however, the Court construes this allegation as supporting his First Amendment retaliation claim instead.

1    ### III.    STANDARD OF REVIEW

2    #### A.    Complaint

3        In civil actions where the plaintiff is incarcerated and/or proceeding IFP, a

4    court must screen the complaint under 28 U.S.C. §§ 1915 and 1915A and must

5    dismiss a complaint "at any time" if the court determines the complaint, or any

6    portion thereof: (1) is frivolous or malicious; (2) fails to state a claim upon which

7    relief can be granted; or (3) seeks monetary relief from a defendant who is immune

8    from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A; see Barren v. Harrington, 152

9    F.3d 1193, 1194 (9th Cir. 1998); see also Lopez v. Smith, 203 F.3d 1122, 1126-27

10    n.7 (9th Cir. 2000) (en banc).

11        Under Rule 8, a complaint must contain a "short and plain statement of the

12    claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he

13    short and plain statement must provide the defendant with fair notice of what the

14    plaintiff's claim is and the grounds upon which it rests."  Dura Pharms., Inc. v.

15    Broudo, 544 U.S. 336, 346 (2005) (citation omitted).  In determining whether a

16    complaint fails to state a claim for screening purposes, a court applies the same

17    pleading standard as it would when evaluating a motion to dismiss under Rule

18    12(b)(6).  See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

19        A complaint may be dismissed for failure to state a claim "where there is no

20    cognizable legal theory or an absence of sufficient facts alleged to support a

21    cognizable legal theory."  Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007)

22    (internal quotation marks and citation omitted).  In considering whether a complaint

23    states a claim, a court must accept as true all of the material factual allegations in it.

24    Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011).  However, the court need

25    not accept as true "allegations that are merely conclusory, unwarranted deductions

26    of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049,

27    1055 (9th Cir. 2008) (internal quotation marks and citation omitted).

28    / / /

Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008).  However, liberal construction should only be afforded to "a plaintiff's factual allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989), and the court need not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations," Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).  Further, "a pro se litigant is not excused from knowing the most basic pleading requirements" or "from following court rules." Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000) (citation and internal quotation marks omitted); see also Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants.").

If a court finds the complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend.  Lopez, 203 F.3d at 1126-30.  Leave to amend should be granted if it appears possible the defects in the complaint could be corrected, especially if the plaintiff is pro se.  Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).  However, if, after careful consideration, it is clear a complaint cannot be cured by amendment,

1  the court may dismiss without leave to amend.  Cato, 70 F.3d at 1107-11; see also

2  Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).

3  **B.  Section 1983 Liability**

4  To state a claim for a civil rights violation under § 1983, a plaintiff must allege

5  that: (1) a particular defendant, (2) acting under color of state law, (3) deprived

6  plaintiff of a right guaranteed under the U.S. Constitution or a federal statute.

7  42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48 (1988).  Suits against

8  government officials under § 1983 in their individual capacities "seek to impose

9  personal liability upon a government official for actions he takes under color of state

10  law."  Kentucky v. Graham, 473 U.S. 159, 165 (1985).  "A person 'subjects' another

11  to the deprivation of a constitutional right, within the meaning of [§] 1983, if he does

12  an affirmative act, participates in another's affirmative acts, or omits to perform an

13  act which he is legally required to do that causes the deprivation of which [the

14  plaintiff complains]."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Section

15  1983 requires that plaintiffs show that a person's act or omission constituted a breach

16  of duty that proximately caused the alleged constitutional injury.  Mendez v. Cnty. of

17  Los Angeles, 897 F.3d 1067, 1074 (9th Cir. 2018).

18  For conduct to constitute an action taken "under color of law," "the deprivation

19  must be caused by the exercise of some right or privilege created by the State . . . or

20  by a person for whom the State is responsible[.]"  West, 487 U.S. at 49 (internal

21  quotation marks omitted).

**IV.   DISCUSSION**

22

23  **A.   Plaintiff's Official Capacity Claims Against All Individual**

24  **Defendants Fail.**

25  **1.   Legal Standard**

26  Unconstitutional acts by government officials do not automatically impose

27  liability on the government itself.  Rather, local government entities are subject to

28  § 1983 suits where an "action pursuant to official municipal policy of some nature

22

cause[s] a constitutional tort." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 691 (1978). Plaintiff's claims against the Individual Defendants in their official capacities are also Monell claims because by naming the individual defendants in their official capacities, Plaintiff is essentially suing the entity that employs them. Graham, 473 U.S. at 166 (citation omitted). Therefore, Plaintiff's claims against the individual officers in their official capacities are another way of pleading claims against the County and RCSD. See Monell, 436 U.S. at 690 n.55 (an official capacity claim is merely another way of pleading a claim against the governmental entity of which the official is an agent).

Therefore, Plaintiff's claims against the RCSD and the County are analyzed under the Monell standard, which establishes that local government entities can be sued directly under § 1983 for monetary or equitable relief where it is alleged that the entity's official or unofficial policy, custom, usage, or practice is the "moving force [behind] the constitutional violation." Id. at 690, 694. A plaintiff can establish this "municipal liability" by alleging the existence of an actual policy, practice, or custom; establishing that the officer responsible for the injury acted with "final policy-making authority"; or proving that such an official ratified a subordinate's unconstitutional conduct. Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992); see also Monell, 436 U.S. at 694 (Municipal liability attaches only where a constitutional injury is caused by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy or custom . . . .").

A plaintiff must plead: "(1) that the plaintiff possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and[] (4) that the policy is the moving force behind the constitutional violation." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks, alterations, and citations omitted).

Proof of random acts or isolated events is insufficient to establish a custom or practice. Thompson v. City of L.A., 885 F.2d 1439, 1444 (9th Cir. 1989). Rather, a plaintiff must prove widespread, systematic constitutional violations which have become the force of law. Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997) ("Brown"). In addition, a plaintiff must show the policy, practice, or custom was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (citation omitted).

When claiming that officials with policy-making authority ratified unconstitutional conduct, "[m]unicipal liability under [§] 1983 attaches only where 'a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" Gillette, 979 F.2d at 1347 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986)). Further, precedent "requires that a policymaker approve a subordinate's decision and the basis for it before the policymaker will be deemed to have ratified the subordinate's discretionary decision." Id. (citing Bouman v. Block, 940 F.2d 1211, 1231 (9th Cir. 1991)) (emphasis omitted).

Because no respondeat superior liability, which means that the entity is responsible for the alleged bad acts of its employee, exists under § 1983, a municipality is liable only for injuries that arise from an official policy or longstanding custom. Monell, 436 U.S. at 694.

Additionally, "when a plaintiff asserts claims against a local government entity and an official of that entity in their official capacity, courts routinely dismiss the official capacity claim as duplicative and redundant." Poe v. Cnty. of Ventura, No. CV 16-06083 RGK (SKx), 2017 WL 5125748, at *2 (C.D. Cal. Feb. 3, 2017) (citing Contreras, ex rel. Contreras v. Cnty. of Glenn, 725 F. Supp.2d 1157, 1159 (E.D. Cal. 2010)); Aviles v. Manzo, No. CV 21-8197-JGB (JPR), 2022 WL

24

2195209, at *3 (C.D. Cal. May 18, 2022), <u>report and recommendation adopted</u>, No. CV 21-8197-JGB (JPR), 2022 WL 2192996 (C.D. Cal. June 17, 2022).

### 2.   Application

#### a.   <u>Redundant Official Capacity Claims</u>

##### (i)   Defendant Bianco

First, Plaintiff alleges that Defendant Bianco, as Sheriff, "is responsible for the health and safety of inmates and mandated to follow all local, state, and federal laws" governing inmate health and safety and "is responsible for enforcing the policies and procedures within the five local jails under his custody and control." ECF No. 21, SAC at 8.  Plaintiff also alleges that Defendants Bianco and RCSD approved the "extreme restrictions on human contact" imposed on Plaintiff and placed "influential or problematic" inmates, including Plaintiff, in isolation as a matter of official and unofficial policy, and that Defendant Bianco and others have deprived Plaintiff of his Eighth and Fourteenth Amendment rights through their policies and practices.  <u>See id.</u> at 12, 17-18, 28-29.

Here, Plaintiff's allegations against Defendant Bianco are vague and conclusory and fail to show he was personally involved in perpetrating the alleged violations of Plaintiff's due process rights.  <u>See Iqbal</u>, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Further, even though Plaintiff's claims regarding his placement in isolation may proceed and Plaintiff alleges that Defendant Bianco possessed final policy making authority and enforced policies against Plaintiff, Plaintiff's official capacity claim against Defendant Bianco should be dismissed as redundant of the claims against RCSD.  <u>See Poe</u>, 2017 WL 5125748, at *2.

##### (ii)   Defendant Hedge

Next, Plaintiff alleges that Defendant Hedge possesses final policy-making authority and authorizes and approves all policies and procedures at RPDC, ECF

No. 21, SAC at 9, and has "persistently denied Plaintiff the normal contact necessary for a person's mental and physical well-being," causing Plaintiff "psychological deterioration," id. at 14.  Plaintiff alleges that he submitted grievances regarding his housing designation and that Defendant Hedge responded, approving subordinates' responses.  See id. at 16, 25-27.  Plaintiff alleges that Defendant Hedge and other Defendants, through their "official and unofficial" policies, have "effectively denied [P]laintiff his right to religious freedom," and have violated Plaintiff's Eighth and Fourteenth Amendment rights by imposing "extreme restrictions" on Plaintiff and placing him in "debilitating conditions[.]"  Id. at 17, 25, 29, 31.  To the extent that these allegations are sufficient to state an official capacity claim against Defendant Hedge, such a claim should nevertheless be dismissed as redundant of Plaintiff's claims brought against Entity Defendant RCSD.  See Poe, 2017 WL 5125748, at *2.

b.   Insufficient Official Capacity Allegations

(i)   Defendant Boydd

Although Plaintiff alleges that Defendant Boydd's assertion that the Indio Jail was under a variance and not obligated to provide certain amenities shows that RCSD had a "practice to house inmates in isolation cells as an act of reprisal[] due to inmates exercising their right to submit grievances and pursuing litigation against RCSD," ECF No. 21, SAC at 11, based on Plaintiff's allegations, this appears to be a one-time incident when Plaintiff was housed at Indio Jail, temporarily, prior to a court date, see id. at 10-11.  Additionally, Plaintiff fails to allege Defendant Boydd possessed final policy-making authority sufficient to state an official capacity claim against Defendant Boydd.  See Gillette, 979 F.2d at 1347.

(ii)   Defendant Taylor

Regarding Defendant Taylor, Plaintiff describes the conditions he has been subjected to in isolation or ADSEG and alleges that Defendants Taylor and others through their "official and unofficial" policies have imposed these "extreme

26

restrictions" on Plaintiff.  ECF No. 21, SAC at 17.  Plaintiff alleges that Defendant Taylor made the decision to place Plaintiff in isolation and approved Defendant Rocha's explanation for Plaintiff's housing assignment.  Id. at 15-16.  Although Plaintiff alleges that Defendant Taylor was a supervisor at the facility where Plaintiff was held and approved of Plaintiff's isolation, directly and indirectly causing Plaintiff harm, Plaintiff does not allege Defendant Taylor was "responsible for establishing final policy with respect to the subject matter in question."  See Gillette, 979 F.2d at 1347.  Accordingly, Plaintiff's claim against Defendant Taylor in his official capacity fails.

(iii)    Defendant Campa

Plaintiff alleges that Defendant Campa and others denied Plaintiff his right to exercise his religious beliefs through "their policies and racist practices[.]"  ECF No. 21, SAC at 31.  Plaintiff alleges that Defendant Campa responded to Plaintiff's grievances about denials of requests for religious items and services by stating that such requests were against jail policy and created a security issue, but that Defendant Campa improperly failed to specify which policies he referred to.  Id. at 24-25.  However, Plaintiff does not allege that Defendant Campa possessed final policy making authority or made a deliberate choice to follow a course of action made from various alternatives and, therefore, fails to state an official capacity claim against Defendant Campa.  See Gillette, 979 F.2d at 1347.

(iv)    Defendant Crebar

Plaintiff alleges that Defendant Crebar engaged in retaliatory cell searches and sham thirty-day reviews of Plaintiff's housing status, and that Defendant Crebar responded to one of Plaintiff's grievances regarding Plaintiff's refusal to comply with the RCSD policy requiring inmates to be dressed to receive meals, stating that Plaintiff "displayed negative behavior and fail[ed] to follow facility rules[,] which is a danger to staff and inmates."  ECF No. 21, SAC at 12, 19, 19 n.19, 28, 30.  However, Plaintiff does not allege that Defendant Crebar possessed final policy

27

making authority or made a deliberate choice to follow a course of action made from various alternatives.  See Gillette, 979 F.2d at 1347.  Accordingly, Plaintiff fails to state an official capacity claim against Defendant Crebar.

(v)     Other Individual Defendants

Plaintiff further alleges that all Individual Defendants "caused, created, condoned, authorized, ratified, approved, and/or knowingly acquiesced" in the illegal "conditions, actions, customs and practices employed" by the County and RCSD.  ECF No. 21, SAC at 8.  However, this conclusory allegation, without more, does not adequately allege that any Individual Defendant had final policy making authority or made a deliberate choice to follow a course of action made from various alternatives, and therefore, Plaintiff does not state an official capacity claim against the other Individual Defendants.  See Gillette, 979 F.2d at 1347.  To the extent Plaintiff makes any allegations against the following Individual Defendants, such allegations are vague and insufficient to state an official capacity claim.

First, the only allegation involving Defendants Deanda and Conchas is that these Defendants conducted a search of Plaintiff's cell at the direction of Defendants Uriarte and Webb and in retaliation for Plaintiff's filing of grievances and initiating a hunger strike.  See ECF No. 21, SAC at 22.  This single factual allegation explicitly naming Defendants Deanda and Conchas fails to state an official capacity claim against these Defendants.

Next, as addressed later in this Order, Plaintiff's allegations against Defendants Kafka, Cutner, and Harris fail to state a claim for any constitutional violations against these Defendants in either their individual or official capacity, in violation of Rule 8.  Additionally, as discussed later in this Order, Plaintiff's takings claims regarding the commissary pricing fail, and therefore, the official capacity claims against Defendants Purcelli and Collins also fail.

Regarding the remaining Individual Defendants, Uriarte, Hill, Sappington, Webb, Rocha, Martinez, Vernal, Sanchez, Molina, Arteaga, Plaintiff includes no

allegations that these Defendants possess final decision-making authority or made a deliberate choice to follow a course of action made from among various alternatives. See Gillette, 979 F.2d at 1347; see also Slade v. Gates, No. 01–8244–RMT, 2002 WL 31357043, at *2-3 (C.D. Cal. Oct. 2, 2002).  Accordingly, Plaintiff's official capacity claims against these Defendants fail.

**B.     Plaintiff's Unconstitutional Takings Claim Fails.**

**1.     Legal Standard**

The Due Process Clause of the Fifth and Fourteenth Amendments guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. Amend. V, XIV.  "[I]ndividuals must receive notice and an opportunity to be heard before the Government deprives them of property." United States v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993).

"The Takings Clause of the Fifth Amendment prohibits the government from taking private property for public use without just compensation."  Ward v. Ryan, 623 F.3d 807, 810 (9th Cir. 2010).  "To establish a violation of the Takings Clause, [a plaintiff] must first demonstrate he has a property interest that is constitutionally protected."  Id. (citations omitted).

"A regulatory taking involves government regulation that proves to be so onerous that its effect is tantamount to a direct appropriation or ouster."  Reichert v. Keefe Commissary Network, L.L.C., 331 F.R.D. 541, 554 (W.D. Wash. 2019) (internal quotation marks, citations, and alterations omitted); Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537 (2005).

**2.     Application**

Here, Plaintiff claims that by inflating commissary prices and using the increased revenue to fund construction of the new Indio Jail, the Entity Defendants, Keefe LLC, and Individual Defendants Purcelli and Collins violated Plaintiff's Fifth and Fourteenth Amendment rights.  ECF No. 21, SAC at 25-26, 32.  Plaintiff alleges

1    that this misuse of funds amounts to extortion of inmates' finances and an

2    unconstitutional taking of property.[6]  See id. at 32.

3         However, as the Court has previously instructed Plaintiff, see, e.g., ECF No.

4    16, Second ODLA at 41, "[i]nflated commissary prices do not provide a basis for a

5    constitutional claim because there is no constitutional right to purchase items from

6    the canteen."  Sanchez v. Lerdo Kern Cnty. Detention Facility, No. 1:14–cv–01424–

7    MJS (PC), 2015 WL 1345808, at *7 (E.D. Cal. Mar. 23, 2015) (citing Keenan v.

8    Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)); Dushane v. Sacramento Cnty. Jail, No.

9    2:13–cv–2518 2014 WL 3867468, at *6 (E.D. Cal. August 6, 2014); Thomas v.

10   Madera Ct. Dep't of Corr., No. 1:06–cv–00649, 2010 WL 1444536, at *3 (E.D. Cal.

11   April 9, 2010) (inmate's complaint about purchasing noodles at inflated price was

12   "frivolous"); see also Ingram v. Thurmon, No. C19-5378 RBL-TLF, 2019 WL

13   2422604, at *2 (W.D. Wash. June 7, 2019) ("Price gouging may be improper, but

14   prisoners and their families do not have a right to cheap commissary prices.").

15        Further, Plaintiff has not shown that he possesses a property interest in

16   commissary items or that the increased commissary prices are so onerous that it

17   effectively results in a direct appropriation of funds.  Thus, Plaintiff cannot establish

18   a claim under the Takings Clause from an increase in commissary prices, and this

19   claim should be dismissed.

20        Additionally, Plaintiff's allegations that Defendant Bianco used the funds

21   from commissary purchases to fund a new facility rather than for the inmate welfare

22   fund are conclusory and fail to state a plausible claim under § 1983.  See Ashcroft,

23

---

24   [6] Plaintiff also includes one factual allegation, which he does not tie to a constitutional violation:

25   starting in 2015, Defendants RCSD, the County, and Keefe LLC began to charge Plaintiff for cash
     deposits into his trust account without notice "circumvent[ing] the statutory language in order to

26   profit[.]"  Id. at 27-28.  However, Plaintiff does not elaborate on what statute this lack of notice
     allegedly violated; Plaintiff does not provide sufficient detail such that Defendants could respond;

27   and Plaintiff does not allege that the fees allegedly charged depleted Plaintiff's trust account.
     Therefore, to the extent this allegation is linked to a claim, it should be dismissed for failure to

28   state a claim under § 1983.  See Fed. R. Civ. P. 8.

556 U.S. at 686-87; Bureerong v. Uvawas, 922 F. Supp. 1450, 1462 (C.D. Cal. 1996) (The Court need not accept as true "unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations.").  Accordingly, Plaintiff fails to state a claim under the Takings Clause, and this claim should, therefore, be dismissed, with prejudice.

## C.    Plaintiff's Individual Capacity Claims Against Various Defendants Fail.

### 1.    Legal Standards

A court may dismiss a complaint because it is unintelligible or frivolous "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).  Further, Rule 8 requires that a complaint clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131-32 (9th Cir. 2008); Conley v. Gibson, 355 U.S. 41, 47 (1957).  "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).

To comply with Rule 8, a plaintiff must link each defendant to specific instances of unlawful conduct.  See Estate of Bock ex rel. Bock v. Cnty. of Sutter, No. 2:11–CV–00536–MCE, 2012 WL 423704, at *6 (E.D. Cal. Feb. 8, 2012).  Where a plaintiff sues multiple defendants, "[s]pecific identification of the parties to the activities alleged by [a plaintiff] is required . . . to enable the defendant to plead intelligently." Sherrell v. Bank of Am., N.A., No. CV F 11-1785 LJO JLT, 2011 WL 6749765, at *4 (E.D. Cal. Dec. 22, 2011) (internal quotations omitted).  If the Complaint does not specify which conduct is attributable to which defendant, it is subject to dismissal.  See id. (dismissing complaint where it "lack[ed] cognizable

facts of defendants' purported wrongdoing to provide fair notice as to what each defendant is to defend").

To properly state a claim against Defendants in their individual capacities, a plaintiff must explain:

(1)    the constitutional right that [plaintiff] believes was violated;
(2)    the name of the defendant who violated the right;
(3)    exactly what the defendant did or failed to do;
(4)    how the action or inaction of the defendant is connected to the violation of [plaintiff's] constitutional right; and
(5)    what specific injury [plaintiff] suffered because of the defendant's conduct.

Tucker v. Stewart, 72 F. App'x 597, 598 (9th Cir. 2003) (denying Plaintiff's claims for failing to satisfy Rule 8 where he failed to allege these elements as instruct[ed] by the district court).

Where a defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant is not liable.  See Shehee v. Luttrrell, 199 F.3d 295, 300 (6th Cir. 1999) (holding that defendants whose only participation was the denial of administrative grievances could not be held liable in a civil rights action); El-Shaddai v. Stainer, No. CV 14-9313 GHK(JC), 2016 WL 7261230, at *16 (C.D. Cal. Dec. 13, 2016) (citing Shehee for the proposition that prison officials whose only roles involved the denial of grievances could not be held liable).  Further, this type of conduct does not support a claim for Monell liability because, as explained by the Ninth Circuit, "[t]o hold cities liable under [§] 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle respondeat superior liability into [§] 1983 law."  Gillette, 979 F.2d at 1348; see also Ashcroft, 556 U.S. 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

/ / /

32

## 2.   Application

First, Plaintiff includes Defendant Bianco in the lists of Defendants that violated Plaintiff's Eighth and Fourteenth Amendment Rights.  ECF No. 21, SAC at 28, 30.  As stated previously, Plaintiff's allegations against Sheriff Bianco are vague and conclusory and fail to show he was personally involved in perpetrating the alleged violations of Plaintiff's due process rights.  Further, although Plaintiff alleges that he sent a letter to Defendant Bianco, among other Defendants, stating the constitutional basis for the hunger strike and requesting basic due process and an end to discriminatory conduct against "minorities[,]" id. at 12, Plaintiff makes no further allegations about Defendant Bianco's action or inaction after receipt of the letter, or how Defendant Bianco's action or inaction is connected to Plaintiff's constitutional rights violations.  Therefore, Plaintiff fails to state an individual capacity claim against Defendant Bianco, and as such, this claim should be dismissed.  See Tucker, 72 F. App'x at 598.

Next, Plaintiff includes Defendant Kafka in a list of Defendants who allegedly violated Plaintiff's Eighth and Fourteenth Amendment rights by placing Plaintiff in segregation "without due process of law" and "by housing [P]laintiff in segregation/isolation[] as an act of reprisal[.]"  ECF No. 21, SAC at 28, 30.  However, Plaintiff fails to make specific factual allegations that Defendant Kafka was involved in the deprivation of Plaintiff's rights.  Plaintiff alleges Defendant Kafka met with Plaintiff to discuss "meaningful review" of inmates' ADSEG or isolation housing status and "agreed to re-evaluate the policies and implement new policies[,]" id. at 12, yet this allegation alone does not show Defendant Kafka was engaged in wrongdoing.  Accordingly, Plaintiff's claim against Defendant Kafka fails and should be dismissed.

Next, Plaintiff lists Defendant Harris as a Defendant but includes no factual allegations about Defendant Harris's participation in constitutional deprivations other than that Defendant Harris presided over Plaintiff's disciplinary hearing after

other Defendants allegedly located a weapon in Plaintiff's cell.  Id. at 23.  Plaintiff

states that he requested video footage, but that Defendant Harris denied the request,

found Plaintiff guilty of a disciplinary violation, and punished Plaintiff with seven

days in "disciplinary housing and [three] days [of] disciplinary diet."  Id.  Plaintiff

states that Defendant Harris "failed to rely on evidence[] and simply concurred with

the predetermined disposition of [D]efendant Sappington."  Id.  Plaintiff's due

process claims do not include or allege facts about this disciplinary hearing, nor

does Plaintiff link this single factual allegation against Defendant Harris to any of

Plaintiff's other constitutional claims.  Further, Plaintiff's factual allegations that

Defendant Harris did not weigh or rely on the evidence presented in Plaintiff's

disciplinary hearing are conclusory at best.  Accordingly, because Plaintiff fails to

link these factual allegations to any of Plaintiff's claims, and because Plaintiff

makes only conclusory allegations against Defendant Harris, Plaintiff's individual

capacity claims against Defendant Harris should be dismissed.

　　　　Plaintiff alleges that Defendant Curtner, along with other Defendants, violated

Plaintiff's Eighth and Fourteenth Amendment rights.  Id. at 28.  The only factual

allegations involving Defendant Curtner are that he provided a written response to

Plaintiff's grievance regarding lack of meaningful review of Plaintiff's placement in

isolation and that this written response stated that "I find prior grievances dating

back to February and [M]arch of 2019 . . . were already addressed through the

Captain[']s level and will not be forwarded any further."  Id. at 19.  These

allegations fail to state a claim for a constitutional violation.  See Zepeda, 2014 WL

3615263, at *5 (The "'grievance procedure is a procedural right only, it does not

confer any substantive right upon the inmates.'" (quoting Buckley v. Barlow, 997

F.2d 494, 495 (8th Cir. 1993) (per curiam))).  Plaintiff does not have an independent

due process claim of entitlement to a grievance procedure.  See Mann v. Adams,

855 F.2d 639, 640 (9th Cir. 1988); Ramirez v. Galarza, 334 F.3d 850, 860 (9th Cir.

2003).  Accordingly, Plaintiff's individual capacity claim against Defendant Curtner fails and should be dismissed.

## V.    RECOMMENDATION

IT IS THEREFORE RECOMMENDED the District Court issue an Order:

(1)    Adopting the findings in this R&R;

(2)    DISMISSING Plaintiff's § 1983 official capacity claims against all Individual Defendants, WITH PREJUDICE and without leave to amend;

(3)    DISMISSING Plaintiff's Takings claim, WITH PREJUDICE and without leave to amend; and

(4)    DISMISSING Plaintiff's § 1983 individual capacity claims against Defendants Bianco, Kafka, Harris, and Curtner, WITH PREJUDICE and without leave to amend.

If the above recommendations are adopted, the Court will issue a separate order regarding service of the remaining claims on the following Defendants for the respectively identified claims:

- Defendant RCSD and the following Individual Defendants in their individual capacities: Rocha, Sanchez, Crebar, Molina, Arteaga, Martinez, Vernal, Hedge, and Taylor, for a violation of Plaintiff's due process rights;

- The Entity Defendants, and the following Individual Defendants in their individual capacities: Sanchez, Molina, Martinez, Rocha, Arteaga, and Vernal, for a violation of Plaintiff's Fourteenth and Eighth Amendment right to be free from cruel and unusual punishment;

- Defendants Webb, Uriarte, Rocha, Crebar, Vernal, Sanchez, Arteaga, Molina, Deanda, Conchas, Martinez, Scott, Taylor, and Boydd, in their individual capacities, for violation of Plaintiff's First Amendment right to be free from retaliation; and

- The Entity Defendants and the following Individual Defendants in their individual capacities: Hill, Uriarte, Campa, and Hegde, for Plaintiff's

35

religious discrimination claim, which the Court construes as a RLUIPA and First Amendment Free Exercise claim, rather than a Fourteenth Amendment Equal Protection claim.

Dated:  November 15, 2022

_____

HON. SHASHI H. KEWALRAMANI
United States Magistrate Judge

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals but may be subject to the right of any party to file Objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.